UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CITIMORTGAGE, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:09cv1997 TCM |
| | ) |
| MASON DIXON FUNDING, INC., and | ) |
| EMBRACE HOME LOANS, INC., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This breach of contract action is before the Court[1] on the motion of CitiMortgage, Inc. ("CMI") to dismiss the counterclaim of Embrace Home Loans, Inc. (Embrace) and on Embrace's motion to sever the case against it from the case against Mason Dixon Funding, Inc. (Mason). [Docs. 62, 71] Both motions are opposed.

## Background

CMI purchases, resells, and services residential mortgage loans on the secondary mortgage market. (Compl.[2] ¶ 1.) Embrace, formerly known as Advanced Financial Services, Inc.,[3] and Mason originate, source, and/or resell residential mortgage loans. (Id. ¶¶ 1, 15.) Mason and CMI entered into a contract in 2004 and an addendum to the contract, also in

---

[1]The case is before the undersigned United States Magistrate Judge by written consent of the parties. See 28 U.S.C. § 636(c).

[2]All references to "Compl." are to the Amended Complaint.

[3]Embrace is named for itself and as successor-in-interest to Advanced Financial Services, Inc.

2004, providing for the sale of loans by Mason to CMI.[4]  (Id. ¶¶ 2, 23.)  CMI alleges that specific loans sold to it by Mason did not meet various criteria set forth in the CMI Manual and required under their contract and the addendum.  (Id. ¶¶ 3, 32.)  For instance, some loans were subject to first payment defaults; some loans were issued on materially inaccurate information or misrepresentations.  (Id. at ¶¶ 3, 33-56.)  CMI gave notice to Mason of the noncompliance and demanded compliance; however, Mason failed to cure the cited defects.  (Id. ¶¶ 4, 57, 59.)  Under the 2004 contract and addendum, CMI has the unilateral right to demand that Mason repurchase the loans at issue.  (Id. ¶¶ 5, 29-30.)  It has demanded repurchase.  (Id. ¶ 33-56.)  Mason has not complied.  (Id. ¶ 5, 59.)  Consequently, it is allegedly in breach of the contract and addendum.  (Id. ¶¶ 5, 60.)

     Similarly, Embrace and CMI entered into a contract, amendment, and addendum in 2005.[5]  (Id. ¶¶ 7, 63-65.)  Some of the loans sold by Embrace to CMI did not meet the necessary criteria.  (Id. ¶¶ 8, 74-79.)  CMI has notified Embrace of the defects and demanded compliance.  (Id. ¶ 9.)  Embrace has not complied.  (Id. ¶¶ 9, 80, 82.)  CMI has demanded that Embrace repurchase the loans.  (Id. ¶ 10, 74-79.)  Embrace has not, and is now allegedly in breach of the contract, amendment, and addendum.  (Id. ¶ 10, 80, 82.)

---

[4]The contract and addendum are attached as exhibits to the amended complaint.  (See Compl. Exs. 1, 2.)

[5]The contract, amendment, and addendum are attached as exhibits to the amended complaint.  (See Compl. Exs. 4-6.)

Both the breach of contract counts cite a provision in the respective contracts giving CMI "sole and exclusive discretion" to determine that a loan purchased under the contract must be repurchased.[6] (Id. ¶¶ 29, 71.)

In response to the breach of contract count against it, Embrace, in addition to answering CMI's allegations, raises nine affirmative defenses, including one based on the doctrine of laches, one based on waiver, and another on allegations that CMI breached the covenant of good faith and fair dealing in its agreements with Embrace. (Embrace Answer at 6-7.) Embrace also raises a counterclaim against CMI for breach of the covenant of good faith and fair dealing. (Id. at 17-18.) Evidence of this breach is (a) the lack of any required knowledge or belief by Embrace that the information provided by the borrowers or appraisers was materially inaccurate; (b) in respect to two of the five loans, the issuance of the loans in accordance with CMI's guidelines and procedures expressly approving their issuance without the verification of income; (c) the retrospective appraisals by CMI years after having underwritten and approved the loans; (d) the lack of a "good faith belief" that the debt-to-income ratio and loan-to-value ratio were improperly inflated; (e) the requirement by CMI of a higher rate of interest on loans to borrowers lacking verification of income and then, after benefitting from the transaction, demanding repurchase; (f) the failure of CMI to withdraw the tenders of the cited loans after Embrace explained why it was rejecting CMI's demand for repurchase; and (g) the failure of CMI to allow Embrace to cure the complained-of defects before demanding repurchase. (Id.) Embrace further alleges that, as a

---

[6]This provision is in Section 11 of "Form 200," the "Correspondent Loan Purchase Agreement." (See Compl. Exs. 1, 4.)

consequence of CMI's breach of the covenant of good faith and fair dealing, it has been damaged in an amount exceeding $75,000.00. (Id. at 18.)

CMI moves to dismiss Embrace's counterclaim under Federal Rule of Civil Procedure 12(b)(6), arguing that there can be no breach of the covenant of good faith and fair dealing when the alleged breacher is merely acting in accordance with the express terms of the contract, as was CMI when demanding repurchase after Embrace refused to cure defects in the loans it sold to CMI.

Embrace moves to sever the action against it, arguing that its joinder was improper because the allegations against it do not arise out of the same transaction, occurrence, or series of transactions and occurrences as do CMI's claims against Mason.

## Discussion

Motion to Dismiss. When ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must take as true the alleged facts and determine whether they are sufficient to raise more than a speculative right to relief. **Bell Atl. Corp. v. Twombly**, 550 U.S. 544, 555-56 (2007). The Court does not, however, accept as true any allegation that is a legal conclusion. **Ashcroft v. Iqbal**, 129 S.Ct. 1937, 1949-50 (2009). The complaint must have "'a short and plain statement of the claim showing that the [counterclaimant] is entitled to relief,' in order to 'give the [counter-defendant] fair notice of what the . . . claim is and the grounds upon which it rests.'" **Twombly**, 550 U.S. at 555 (quoting first Fed. R. Civ. P. 8(a)(2) and then Conley v. Gibson, 355 U.S. 41, 47 (1957), abrogated by Twombly, supra); see also **Gregory v. Dillard's Inc.**, 565 F.3d 464, 473 (8th Cir. 2009) (en banc). Although detailed factual allegations are not necessary, a complaint that contains "labels and

conclusions," and "a formulaic recitation of the elements of a cause of action" is not sufficient. **Twombly**, 550 U.S. at 555; accord **Iqbal**, 129 S.Ct. at 1949. The complaint must set forth "enough facts to state a claim to relief that is plausible on its face." **Twombly**, 550 U.S. at 570; accord **Iqbal**, 129 S.Ct. at 1949; **Brown v. Medtronic, Inc.**, 628 F.3d 451, 459 (8th Cir. 2010); **Braden v. Wal-Mart Stores, Inc.**, 588 F.3d 585, 594 (8th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." **Iqbal**, 129 S.Ct. at 1949. If the claims are only conceivable, not plausible, the complaint must be dismissed. **Twombly**, 550 U.S. at 570; accord **Iqbal**, 129 S.Ct. at 1950. Moreover, in considering a Rule 12(b)(6) motion, "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." **Braden**, 588 F.3d at 594. The issue in considering such a motion is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of the claim. See **Neitzke v. Williams**, 490 U.S. 319, 327 (1989).

And, as here, when documents are attached as exhibits to the complaint, the Court "may look at such documents" when considering whether the challenged allegations state a plausible claim. **Brown**, 628 F.3d at 459-60.

Additionally, as here, when a case is before the Court on diversity jurisdiction, the Court applies the Rule 12(b)(6) standard to the motion to dismiss and Missouri law as to the substantive basis for the motion. See **In re Baycol Prods. Litig.**, 616 F.3d 778, 785 (8th Cir. 2010); **Ashley Cnty., Ark. v. Pfizer, Inc.**, 552 F.3d 659, 665 (8th Cir. 2009).

CMI argues that under Missouri substantive law, a claim for breach of the implied covenant of good faith and fair dealing does not lie when the complained-of actions, i.e., the demand for cure or repurchase of defective loans, is expressly permitted by the parties' contract. Consequently, Embrace has no counterclaim against CMI for actions arising from CMI's decision to unilaterally demand Embrace's cure or repurchase of specific loans.

"Missouri law implies a covenant of good faith and fair dealing in every contract." **Farmers' Elec. Coop., Inc. v. Mo. Dep't of Corrs.**, 977 S.W.2d 266, 271 (Mo. 1998) (per curiam); accord **Owen v. General Motors Corp.**, 553 F.3d 913, 921 (8th Cir. 2008); **Cordry v. Vanderbilt Mortg. & Fin., Inc.**, 445 F.3d 1106, 1110 (8th Cir. 2006). This covenant "encompasses an obligation imposed by law to prevent opportunistic behavior, that is, the exploitation of changing economic conditions to ensure gains in excess of those reasonably expected at the time of contracting." **City of St. Joseph, Mo. v. Lake Contrary Sewer Dist.**, 251 S.W.3d 362, 370 (Mo. Ct. App. 2008); accord, **Schell v. Lifemark Hosps. of Mo.** 92 S.W.3d 222, 230 (Mo. Ct. App. 2002). The covenant does not impose a duty of candor or "import to contract law the negligence principles of tort law." **Id.**

The contract at issue gives CMI "sole and exclusive discretion" to determine whether a loan was, inter alia, underwritten in violation of the provisions of its manual and, upon a determination that it was and the failure of the other party to correct or cure the defect, to, at its "sole and exclusive discretion," require repurchase or another remedy as CMI "may deem appropriate." (Compl. ¶ 71.)

"'[W]here a contract confers on one party a discretionary power affecting the rights of the other, a duty is imposed to exercise the discretion in good faith and in accordance with

fair dealing.'" **City of St. Joseph**, 251 S.W.3d at 369 (quoting John D. Calamari & Joseph M. Perillo, Contracts, 474 (5th ed. 2003)) (alteration in original); accord **Mo. Consol. Health Care Plan v. Cmty. Health Plan**, 81 S.W.3d 34, 45 n.3 (Mo. Ct. App. 2002). Thus, "[w]hen a party provides a single party with discretion, that discretion is not unlimited; it must not be exercised to deprive the other party of the benefit of the contractual relationship or evade the spirit of the bargain." **City of St. Joseph**, 251 S.W.3d at 370; accord **BJC Health Sys. v. Columbia Cas. Co.**, 478 F.3d 908, 914 (8th Cir. 2007).

The tension between a party's right to take an action "within the discretion conferred by the contract" and the duty of good faith and fair dealing was addressed by the court in **Mo. Consol. Health Care Plan**, 81 S.W.3d at 45-49, after a jury rendered its verdict in favor of a counterclaimant asserting such a duty. In that case, a health maintenance organization (HMO) had a contract with a state health care plan (the Plan) to provide health care for a certain group of employees. While the contract was in effect, the HMO began to experience "substantial financial losses" and asked the Plan for an increase in premiums; the Plan refused. The HMO then eliminated "a large portion of its provider network" for the employees. The Plan sued; the HMO counterclaimed for, inter alia, breach of the duty of good faith and fair dealing. The court rejected the Plan's argument "that its failure to grant a premium rate increase above the contractual cap [could not] constitute a breach of the contract of good faith and fair dealing because the contract granted it unfettered discretion in regard to any increases beyond the cap." **Id.** at 45. This would hold true, the Plan had argued, "irrespective of whether it acted in good faith, bad faith or its own self interest." **Id.** The court disagreed, holding that the Plan's argument "ma[de] too much of the discretion

element in the contract . . . ." **Id.** at 48. Although the contract gave the Plan discretion to grant premium increases, the duty of good faith and fair dealing imposed on the Plan "an obligation to exercise the discretionary power conferred by the contract in good fath . . . ." **Id.** at 46. "'Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as involving 'bad faith' . . . . [B]ad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.'" **Id.** at 47 (quoting Restatement (Second) of Contracts § 205, cmts a and d (1981)). Bad faith is not, however, simply an erroneous decision. **Id.** at 48.

Similarly, in **BJC Health Sys.**, 478 F.3d at 914-16, the Eighth Circuit addressed the question whether judgment as a matter of law was improperly granted to an insurer facing a claim of breach of the covenant of good faith and fair dealing. The insurer had the right under the relevant contract to determine incurred loss, a determination that was not "an exact science." **Id.** at 914. This discretion was constrained by the covenant. **Id.** ("This good faith requirement extends to the manner in which a party employs discretion conferred by a contract."). Thus, the court held, it was for the jury to decide whether the insurer exercised its discretion in such a manner as to violate the covenant. **Id.** at 916. See also **Stone Motor Co. v. General Motors Corp.**, 293 F.3d 456, 467 (8th Cir. 2002) (applying Missouri law and finding that summary judgment was improperly granted on breach of covenant of good faith and fair dealing claim; although district court had properly found that covenant could not "'trump' clear allocation of discretion" to alleged breacher, court had erred by accepting assertion "that the grant of unilateral discretion was a shield against any claims for breach

of good faith"; rather, party asserting claim needed to present evidence that the discretion was exercised in such a manner as to "evade the spirit of the transaction" or "deny the other party the expected benefit of the contract") (internal quotations omitted); **City of St. Joseph**, 251 S.W.3d at 369-70 (affirming finding entered after bench trial that city had breached covenant of good faith and fair dealing when enacting ordinance binding on subscribers to an agreement that gave city discretionary power to do so).[7]

Thus, under the standards governing Rule 12(b)(6) motions, Embrace's allegations, see page 3, supra, state a counterclaim for breach of the covenant of good faith and fair dealing.[8]

---

[7]CMI cites four other cases in support of its argument that, as a matter of law, its alleged conduct does not breach the covenant of good faith and fair dealing. The reliance on these cases is misplaced. First, none were before the respective courts on a motion to dismiss. See **Cordry**, 445 F.3d at 1112 (summary judgment); **Basin Elec. Power Coop.**, 248 F.3d at 797-98 (summary judgment); **KAT Excavation, Inc. v. City of Belton, Mo.**, 996 S.W.2d 649, 652 (Mo. Ct. App. 1999) (judgment following a hearing); **Dysart v. Gwin**, No. 4:08cv01985 FRB, 2009 WL 1588653, * 6-7 (E.D. Mo. June 5, 2009) (summary judgment). Second, none held that, under Missouri law, the provision of discretion in a contract automatically precludes a claim for breach of the covenant of good faith and fair dealing. See **Cordry**, 445 F.3d at 1112 (rejecting such a claim after finding that claimant had failed to introduce any evidence that other party "was using anything other than its good-faith business judgment" when exercising discretion); **Basin Elec. Power Coop.** 248 F.3d at 797-98 (finding that under *federal common law* asserted claim for breach was but an effort to rewrite the parties' contract); **KAT Excavation, Inc.**, 996 S.W.2d at 651 (finding that, inter alia, wide discretion granted to public authority to award contract did not permit it to act arbitrarily and must still exercise that discretion in good faith); **Dysart**, 2009 WL 1588653 at *7-8 (entering summary judgment on *uncontested evidence* that party paid reasonable and necessary expenses other party agreed to and noting that a party asserting a breach of the covenant must introduce "substantial evidence that offending party acted in bad faith or engaged in unfair dealing").

In further support of its motion, CMI has submitted copies of Missouri circuit court decisions granting its motion to dismiss on similar claims. These rulings were made by state trial courts under Missouri procedural law and, while informative, are not persuasive.

[8]CMI characterizes this counterclaim as a breach of the implied covenant of good faith and fair dealing by CMI's mere acts of seeking repurchase of the loans at issue and by filing suit to enforce the repurchase provision. (Mem. at 4.) This characterization supports CMI's argument but is a simplification of the counterclaim. (See page 3, supra.)

CMI further argues that Embrace's allegations of equitable estoppel and laches are but affirmative defenses and do not state a counterclaim.

"Equitable estoppel arises from the unfairness of allowing a party to belatedly assert rights if he knew of those rights but took no steps to enforce them until the other party has, in good faith, been disadvantaged by changed conditions." **Comens v. SSM St. Charles Clinic Med. Group, Inc.**, 258 S.W.3d 491, 496 (Mo. Ct. App. 2008). "Whether the doctrine applies upon the facts and circumstances of each particular case." **Id.** It is, however, not a doctrine favored in law and is not to be invoked lightly. **Id.**

Under a heading titled "Embrace's Good Faith Response to the Repurchase Demands," Embrace alleges that CMI is estopped from demanding that the risk of income inaccuracies be shifted to Embrace after having accepted the loans issued based on such inaccuracies and, consequently, carrying a higher rate of interest. (Countercl. ¶ 19(i).) These same allegations, without the use of the word "estopped," are repeated in a subparagraph of Count I of the Counterclaim. (Id. ¶ 25(e).) Under the applicable standard for motions to dismiss, the Court finds these allegations sufficient to state a claim. See e.g. **Weis v. Wanstrath**, 149 S.W.2d 442, 445-46 (Mo. Ct. App. 1941) (remanding case for trial on claims by party alleging that other party seeking to enforce contract to repurchase deeds secured by real property had delayed too long in making repurchase demand; although demand could properly have been made during the previous three years when there was a depression and declining real estate values, party had waited until the depression had ended).

In the three paragraphs of Embrace's counterclaim cited by CMI, i.e., paragraphs 19(f), 20(c), and 25(c), in support of its argument that the doctrine of laches is inapplicable, the term "laches" is not used.

"The invocation of the equitable doctrine of laches requires that a party with knowledge of facts that give rise to his or her rights unreasonably delays asserting those rights for an excessive period of time and the other party suffers legal detriment due to the delay." **Lane v. Non-Teacher Sch. Emp. Ret. Sys. of Mo.**, 174 S.W.3d 626, 639 (Mo. Ct. App. 2005). Although Embrace's allegations echo these requirements, Embrace contends that it is not asserting the doctrine of laches as a counterclaim,[9] but is raising the allegations to support its claim of a breach of the covenant of good faith and fair dealing. The allegations survive a motion to dismiss.

CMI also argues that Embrace's counterclaim fails because its only damages are attorney's fees, which it may not recover under the American rule. See **Lorenzini v. Short**, 312 S.W.3d 467, 473 (Mo. Ct. App. 2010) (defining American rule – "each party is required to bear the expense of its attorney's fees" – and delineating four exceptions, including when a contract authorizes such and when "a court of equity deems fees are warranted in order to 'balance benefits' where very unusual circumstances have been shown"). Embrace alleges in its counterclaim that it "has incurred damages, including attorney's fees incurred in appearing to defend [CMI's] lawsuit," as a result of CMI's allegedly improper demands. (Countercl. ¶ 22.) Its damages as a result of the alleged breach of the covenant of good faith

---

[9]The Court notes that Embrace has raised the doctrine as an affirmative defense, clearly indicating an ability to do so unequivocally when wanted.

and fair dealing are in excess of $75,000. (Id. ¶ 26.) Again, under the applicable standard, the allegation of damages *in addition to* attorney's fees survives a motion to dismiss.

Motion to Sever. As noted by Embrace, this action was originally brought by CMI only against Mason. In its motion for leave to amend its complaint to, inter alia, add allegations against Embrace, CMI alleged that Embrace acquired Mason in December 2009. (Mot., Doc. 26, ¶ 4.) According to that amended complaint, Mason is a Maryland corporation with its principal place of business in that state; Embrace is a Rhode Island corporation with its principal place of business in that state. (Compl. ¶ 13-14.) Embrace acquired Mason in December 2009. (Id. ¶ 16.) In its answer, Embrace states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations about Mason's incorporation and principal place of business. (Ans. ¶ 13.) It denies that it purchased Mason in December 2009. (Id. ¶ 16.)

As noted above, CMI's amended complaint states a claim in Count I against Mason for breach of contract and a claim in Count II against Embrace for breach of contract. At issue in Count I are "at least twenty-four (24) loans" sold by Mason to CMI prior to 2009. (Compl. ¶ 32-33.) Of the twenty-four named loans, CMI demanded repurchase by *Mason* of sixteen loans prior to the alleged acquisition of Mason by Embrace. (See Compl. ¶¶ 33-36, 39-40, 43-45, 47, 49-53, 55.) The first demand for repurchase of the remaining eight loans was made to *Mason* after the acquisition. (Id. ¶¶ 37-38, 41-42, 46, 48, 54, 56.) CMI further alleges that as a consequence of Mason's failure to comply with their agreement, Mason owes it in excess of $3 million. (Id. ¶ 60.)

In Count II, CMI alleges that Embrace sold it at least five loans that CMI has demanded that Embrace repurchase and that Embrace has failed to do so, in violation of their agreement. (Id. ¶ 74-79.) These loans are distinct from the twenty-four loans named in Count I. And, the earliest demand for repurchase on any of the five loans was made the day of the alleged acquisition by Embrace of Mason. (See Id. ¶ 78-79.) As a result of Embrace's alleged breach of their contract, CMI contends that Embrace owes it in excess of $855,000. (Id. ¶ 83.)

One "Request for Relief" follows both counts. (Id. at 19.) This request states, in relevant part: "[CMI] asks that this Court enter judgment in its favor and against Defendants, [Mason] and [Embrace], for an order requiring Defendants to perform its [sic] obligations under the 2004 Agreement and 2005 Agreement, including, but not limited to, repurchase of defective loans in an amount to be proven at trial . . . ." (Id.)

Arguing that the transactions at issue in Count I are distinct and separate from those at issue in Count II, Embrace moves to sever the claims against it from those against Mason. Arguing that the same transaction is at issue because Embrace has acquired Mason and the same contract provisions govern both disputes, CMI vigorously opposes the motion.

Defendants may be joined in once action if:

(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

(B) any question of law or fact common to all defendants will arise in the action.

Fed.R.Civ.P. 20(a)(2). "[W]hether a particular factual situation constitutes a single transaction or occurrence for purposes of Rule 20" is to be determined on a case-by-case basis. **Mosley v. General Motors Corp.**, 497 F.2d 1330, 1333 (8th Cir. 1974). When making that determination, the Court is mindful that "all 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence." **Id.** "Absolute identity of all events is unnecessary." **Id.** The Court is also mindful that "'[a]lthough the same transaction or occurrence requirement of Rule 20 may be construed liberally, this does not mean joinder is proper in the absence of a transactional link.'" **Boshert v. Pfizer, Inc.**, No. 4:08cv1714 CAS, slip op. at 4 (E.D. Mo. May 14, 2009) (quoting DIRECTV v. Loussaert, 218 F.R.D. 639, 642 (S.D. Ia. 2003)).

In **DIRECTV**, the court held that joinder of claims of the same statutory violations against defendants was improper when "the alleged violations of each defendant did not arise out of the same transaction or occurrence." 218 F.R.D. at 642. The court rejected the plaintiff's argument that the transactional requirement of Rule 20 was met because "it was wronged in the same way" by the various defendants, holding that such a reading "would improperly expand the Rule." **Id.** at 643. Moreover, each transaction "represent[ed] a separate and independent act" *and* "[n]o defendant knew of the others' transactions or purposes." **Id.** See also **Movie Sys., Inc. v. Abel**, 99 F.R.D. 129, 130 (D. Minn. 1983) (noting that although claims of pirating of microwave signals were common to all defendants, such claims did not "arise from the *same*" transaction regardless whether they arose from "*similar* transactions" and therefore defendants should not have been joined under Rule 20(a); additionally, no concert of action was alleged, as required); **Khalfani-El v. Clark**,

2010 WL 2135642, *1 (E.D. Mo. 2010) (denying motion to amend complaint to add new defendants on grounds that "[t]he new allegations do not arise out of the same 'transaction, occurrence, or series of transactions or occurrences,' because the alleged actions took place at a different time, at a different location, and for a different reason").

Similarly, in the instant case, CMI relies on the identity of the "Correspondent Agreement Form 200" that was allegedly breached as the basis for joinder of its claims against Macon and Embrace. (See Compl. Exs. 1, 4.) "Correspondent Agreement Form 200" also serves as the basis for CMI's claims in at least twelve other suits for breach of contract pending in the United States District Court for the Eastern District of Missouri: CitiMortg., Inc. v. Premier Bank, No. 4:11cv0572 NAB; CitiMortg., Inc. v. Allied Mortg. Group, No. 4:10cv1863 AGF; CitiMortg., Inc. v. Draper and Kramer Mortg. Corp., No. 4:10cv1748 FRB; CitiMortg., Inc. v. PMC Bancorp, No. 4:10cv1675 SNLJ; CitiMortg., Inc. v. Reunion Mortg., Inc., No. 4:10cv1632 RWS; CitiMortg., Inc. v. Simonich Corp., No. 4:10cv1568 HEA; CitiMortgage, Inc. v. Nova Fin. and Inv. Corp., No. 4:10cv1504 HEA; CitiMortg., Inc. v. First Cal. Mortg. Co., No. 4:10cv1498 RWS; CitiMortg., Inc. v. Mortg. Capital Assocs., Inc., No. 4:10cv1497 HEA; CitiMortg., Inc. v. OMC Bancorp, Inc., No. 4:10cv0467 CDP; CitiMortg., Inc. v. NL, Inc., No. 4:09cv2104 FRB; CitiMortg., Inc. v. Just Mortg., Inc., No. 4:09cv1909 DDN. CMI does not argue that its allegations against these other twelve defendants, also for violations of "Correspondent Agreement Form 200," would favor joinder in one action of its claims against fourteen defendants. Its argument that its claims against Embrace and Mason are the same transaction because the same agreement is at issue would, however, logically result in such a untenable position.

To foreclose such an extension, CMI contends that it has asserted a right to relief against Embrace and Mason jointly. (Pl. Mem. in Opp'n at 5.) A careful reading of its amended complaint does not reveal any such assertion. Rather, CMI distinguishes between the loans sold it by Mason and CMI's resulting damages and the loans sold it by Embrace and its resulting damages. Indeed, CMI made initial repurchase demands of Mason after its alleged purchase by Embrace. With no assertion of joint liability, the mere acquisition of Mason by Embrace is insufficient to support joinder when different transactions are at issue.[10]

## Conclusion

For the reasons set forth above, the Court finds that Embrace's allegations of a breach of the covenant of good faith and fair dealing state a claim. The Court further finds that a severance of CMI's claims against Embrace from its claims against Mason for the purpose of trial is appropriate. Also pending is the parties' joint motion to amend the case management order, which is set for a hearing on Friday, April 15, 2011. The procedural path to be followed by the severed claims will be more clearly determined at that time.

Accordingly,

**IT IS HEREBY ORDERED** that the motion of CitiMortgage, Inc., to dismiss the counterclaim of Embrace Home Loans, Inc., is **DENIED**. [Doc. 62]

---

[10] The parties devote some of their respective arguments to the question of whether there was such an acquisition and, if so, the effect of the purchase. CMI has alleged an acquisition; Embrace has denied such. At this stage of the proceedings, the Court finds it unnecessary to reach this question.

**IT IS FURTHER ORDERED** that the motion of Embrace Home Loans, Inc., to sever due to misjoinder is **GRANTED** in part and **DENIED** in part as set forth above. [Doc. 71]

**IT IS FINALLY ORDERED** that the motion of CitiMortgage, Inc., for a hearing on the motion to sever is **DENIED** as moot. [Doc. 92]

/s/Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this  8th  day of April, 2011.